UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KIMBERLY A. WILLIAMS,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No.

# Original Complaint

Plaintiff, KIMBERLY A. WILLIAMS, sues the Defendant, United States of America (hereinafter "U.S.A."), and alleges:

## Parties, Jurisdiction, Service of Process, and Venue

1. This is a medical malpractice case.

2. This is an action for damages in excess of Seventy-five Thousand Dollars ($75,000), exclusive of interest and costs.

3. Plaintiff, KIMBERLY A. WILLIAMS, resides in Inverness, Florida. Ms. Williams is a veteran of the United States Navy.

4. The Defendant is the United States of America.

5. This Court has jurisdiction under the Federal Tort Claims Act and the provisions of 28 U.S.C. §1346(b), which vests exclusive



subject matter jurisdiction of Federal Tort Claims litigation in the Federal District Court.

6.   The United States of America may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Summons and of the Original Complaint on the United States Attorney Christopher P. Canova, United States Attorney for the Northern District of Florida, by certified mail, return receipt requested at his office, United States Attorney, Gainesville Division, 300 East University Avenue, Suite 310, Gainesville, FL 32601, to the attention of the Civil Process Clerk, and by serving a copy of the Summons and Plaintiff's Original Complaint on Jefferson Sessions, Attorney General of the United States, by certified mail, return receipt requested, at the Attorney General's Office, 10th and Constitution Avenue, N.W., Washington, DC 20530, to the attention of the Civil Process Clerk.

7.   Venue is proper in this Court pursuant to 28 U.S.C § 1402(b), as the United States is a Defendant and a substantial part of the events or omissions giving rise to this action occurred in the district of this Court.



## Jurisdictional Prerequisites

8. On or about September 1, 2016, the Department of Veterans Affairs received from Plaintiff written notice of her claim and intent to initiate litigation for medical malpractice for the negligent treatment by a VA provider.

9. Pursuant to the provisions of 28 U.S.C. §§ 2672 and 2675(a), on or about March 20, 2017, the Department of Veteran Affairs also received Plaintiffs Standard Form 95. The Standard Form 95 form for the Plaintiff is attached hereto and incorporated by reference herein respectively as **Exhibit "A".**

10. On May 3, 2018, the Defendant mailed to Plaintiff a denial of the claim. Less than six months have passed between the denial of Plaintiff's claim and the filing of this Original Complaint, and Plaintiff has complied with all jurisdictional prerequisites and conditions precedent to commencement and prosecution of this litigation.

## Liability of the United States of America

11. This case is commenced and prosecuted against the United States of America pursuant to and in compliance with Title 28 U.S.C. §§2671-2680, commonly referred to as the "Federal Tort Claims Act." Liability of the United States is predicated specifically on Title 28 U.S.C. §§ 1346(b)(1) and 2674 because



the personal injuries and resulting damages of which complaint is made, were proximately caused by the negligence, wrongful acts and/or omissions of employees and/or agents of the United States of America at the Gainesville VA Medical Center, Gainesville, Florida, while acting within the scope of their office or employment, under the circumstances where the United States of America, if a private person, would be liable to the Plaintiff in the same manner and to the same extent as a private individual under the laws of the State of Florida.

### Agency, Employment, and Scope

12. The Department of Veterans Affairs is an agency of the United States of America. The Defendant, United States of America, through its agency, the Department of Veterans Affairs, at all times material hereto, owned, operated, and controlled the health care facilities known as the Malcom Randall VA Medical Center of North Florida/South Georgia Veterans Health Systems (hereinafter referred to as "VA Medical Center:) in Gainesville, Florida, and through its agency, the Department of Veterans Affairs, staffed its facilities with its officers, agents, servants, and/or employees.

13. At all times material hereto, all persons involved in the medical and health care services provided to Ms. Williams at the VA



Medical Center in Gainesville, Florida, were officers, agents, servants or employees of the Department of Veteran Affairs, the United States of America, or some agency thereof, and were at all times relevant, acting within the course and scope of such employment.

14. In this Original Complaint, whenever the terms "Defendant" is used, it means Defendant, Defendant's officers, agents, servants, employees, and/or representatives. Whenever in this Original Complaint, it is alleged that Defendant did any act or thing, it is meant that Defendant, Defendant's officers, agents, servants, employees, and/or representatives did such act or thing, and that at the time such act or thing was done, it was done with the full authorization and ratification of Defendant and was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, and/or representatives. Whenever in this Original Complaint it is alleged that Defendant omitted any act or thing, it is meant that Defendant, Defendant's officers, agents, servants, employees, and/or representatives omitted such act or thing.



## Facts

15. This is a Federal Tort Claims Action for monetary damages sustained by Ms. Williams resulting from serious injuries to Ms. Williams, as a result of substandard, and therefore, negligent, medical and hospital care.

16. This action is brought pursuant to the provision of the Florida Medical Negligence Act, Chapter 766, §§101-316, et seq., Florida Statutes, for the injuries sustained by Ms. Williams, due to the breach of the prevailing standard of care and Florida law by the Defendant.

17. Pursuant to the requirements of §766.203, Florida Statutes, Plaintiff timely provided to the Defendant Affidavits from two medical doctors, corroborating the fact that reasonable ground exist to initiate medical negligence litigation against Defendant. These Affidavits are attached hereto as **Exhibit "B."**

18. This claim concerns negligent medical and hospital care provided by agents, servants, and employees of the United States government at the VA Medical Center, in Gainesville, Florida to Ms. Williams.

19. As is relevant to this Original Complaint, Ms. Williams received care and treatment by Amy Stevens, M.D. at the VA Medical Center from approximately March 10, 2014 through



July 10, 2014. Ms. Williams first consulted with Dr. Stevens on March 10, 2014 for evaluation of rectocele, which is a posterior vaginal prolapse. Dr. Stevens recommended a surgical procedure known as a rectocele repair.

20. On June 4, 2014, Dr. Stevens, a physician employed by VA Medical Center, Gainesville, Florida, performed anorectal surgery for rectocele repair on Ms. Williams. At the time, Ms. Williams was 43 years old. During the procedure, Dr. Stevens negligently punctured Ms. Williams' rectum.

21. Without obtaining an intra-operational consultation from a general or colorectal surgeon, Dr. Stevens performed a rectotomy repair on Ms. Williams' punctured rectum. Dr. Stevens did so by closing the puncture site in 2 layers with 2-0 chromic suture in a locked running fashion.

22. Following the procedure, Ms. Williams was never informed by Dr. Stevens or any other health care provider at the VA Medical Center that her rectum had been punctured or that Dr. Stevens performed a rectotomy repair during the rectocele repair procedure.

23. Ms. Williams was discharged from hospital care the following day on June 5, 2014, with medications and a Sitz bath. Before



she was discharged, she was also told she could resume a regular diet.

24. A few days later, on June 7, 2014, Ms. Williams presented to the ER at the VA Medical Center complaining of dizziness, lightheadedness, and a large amount of vaginal bleeding. Medical records show she underwent a pelvic exam in the ER that showed the repair was intact, but a right perirectal hematoma was suspected. A CT scan confirmed Ms. Williams had a large pelvic hematoma.

25. Ms. Williams was admitted to the hospital that night and started on antibiotics. Her admitting diagnosis was "pelvic abscess." Ms. Williams also received a blood transfusion and on June 9, 2014, she underwent insertion of a drainage catheter for the hematoma. According to the medical records, Ms. Williams underwent another vaginal exam that showed the rectocele repair was still intact.

26. On June 13, 2014, Ms. Williams was discharged, with the drainage catheter in place and with pain medication.

27. Four days later, on June 17, 2014, Ms. Williams returned to the VA Medical Center for removal of the drainage catheter.

28. On July 3, 2014, Ms. Williams had a postoperative appointment with Dr. Stevens. According to the medical records, Ms.



Williams was healing well but she was still experiencing some yellowish discharge. Dr. Stevens assured Ms. Williams that everything was progressing as it should.

29.  Around July 10, 2014, Ms. Williams called the VA Medical Center, complaining of fecal drainage from her vagina. Upon a physical examination, Dr. Stevens discovered a rectovaginal fistula.

30.  Dr. Stevens referred Ms. Williams to a non-VA pelvic floor/colorectal specialist to evaluate repair of the fistula.

31.  Accordingly, on July 23, 2014, Ms. Williams presented to Dr. Sandra Tan at University of Florida Shands for evaluation of a rectovaginal fistula. From that point, Ms. Williams did not treat any further with Dr. Stevens. Ms. Williams' medical records show she had several subsequent medical procedures performed in attempts to repair the fistula.

32.  On September 11, 2014, Ms. Williams followed-up with Dr. Tan concerning the rectovaginal fistula and they discussed EUA with Seton placement.

33.  Five days later, on September 16, 2014, Ms. Williams underwent EUA, Seton placement at UF Shands Hospital by Dr. Tan. During her follow-up appointment on November 26, 2014, Ms. Williams was experiencing yellow drainage and fecal



drainage from the fistula. Dr. Tan suggested a possible fistula repair procedure at that time.

34. On January 5, 2015, Ms. Williams underwent a LIFT procedure to repair the rectovaginal fistula at UF Shands Hospital by Dr. Tan.

35. On January 16, 2015, Ms. Williams presented to Citrus Memorial Hospital with excessive vaginal and rectal bleeding, with abdominal and rectal pain.

36. On March 4, 2015, Ms. Williams presented to Dr. Tan for follow-up recurrent rectovaginal fistula with fecal drainage from her vagina and another fistula repair was discussed during that visit.

37. On May 11, 2015, Ms. Williams presented to Dr. Wexner at Cleveland Clinic Florida for consultation regarding fistula repair. At this time, Dr. Wexner indicated Ms. Williams medical problems were likely caused by the procedure performed by Dr. Stevens at the VA Medical Center. Ms. Williams still had no idea her rectum had been punctured during the rectocele repair procedure.

38. After her first visit with Dr. Wexner, Ms. Williams underwent several procedures by Dr. Wexner. On May 15, 2015, Ms. Williams underwent laparoscopic loop ileostomy creation by



Dr. Wexner. She was hospitalized for six days and discharged on May 21, 2015.

39. On July 15, 2015, Ms. Williams underwent right-sided gracilis interposition with advancement flap closure of fistula by Dr. Wexner in Weston Hospital. She was discharged four days later, on July 19, 2015.

40. On November 3, 2015, Ms. Williams underwent a submucosal anterior midline fistulotomy by Dr. Wexner at Weston Hospital.

41. On December 16, 2015, Ms. Williams underwent fistulotomy by Dr. Wexner at Weston Hospital.

42. On January 29, 2016, Ms. Williams underwent closure of loop ileostomy with small bowel resection and enteroenterostomy by Dr. Wexner at Weston Hospital. She was discharged on February 2, 2016.

43. On February 11, 2016, Ms. Williams presented to Citrus Memorial Hospital post ileostomy reversal with fever, abdominal pain and redness to surgical site. She was discharged on February 15, 2016.

44. On August 8, 2016, Ms. Williams was evaluated by Dr. Wexner at Cleveland Clinic for incisional hernia. Ms. Williams is still



under the care and treatment of Dr. Wexner and she is anticipating an additional surgical procedure.

45. Under Florida law, a medical provider is liable for injuries caused by the medical provider's failure to meet the prevailing standard of care for that health care provider. § 766.102(1), Fla. Stat. (2016). The standard of care must comport with "that level of care, skill, and treatment which, in light of all relevant surrounding circumstance, is recognized as acceptable and appropriate by reasonably prudent similar health care provider." *Id*.

46. Defendant was negligent in the care and treatment of Ms. Williams.

47. Defendant had a duty to provide treatment to Ms. Williams within the prevailing standard of care. Defendant breached the standard of care when it punctured Ms. Williams' rectum during the rectocele repair procedure and then failed to properly repair the punctured rectum.

48. The standard of care also required Defendant to obtain intra-operative general or colorectal surgical consultation to repair the punctured rectum. Defendant breached that duty when it failed to do so and instead undertook to perform the repair on



its own. In so doing, Defendant is held to the same standard of care of a colorectal surgeon when repairing the rectum.

49. Defendant breached the standard of care of colorectal surgeon when repairing the ruptured rectum in 2 layers with 2-0 chromic suture in a locked running fashion. This method did not comport with the prevailing standard of care. As a result, Ms. Williams developed a fistula which would not have otherwise occurred.

50. Defendant also failed to properly monitor and treat Ms. Williams following the rectocele and rectotomy procedure.

51. As a directly and proximate result of Defendant's negligence, Plaintiff was seriously and permanently injured. The damages include, but are not limited to, past and future medical, hospital, nursing expenses incurred because of the multiple procedures, as described above, past and future pain and suffering, mental anguish, physical impairment and disability, lost wages, travel expenses, and other damages.

52. Prior to the incident, Ms. Williams was very active and involved with her children's' lives. Her level of activity and involvement has significantly decreased since the incident.



53. Ms. Williams continues to have physical pain. Ms. Williams is still experiencing excruciating pain when having intercourse. She is also in need of an additional surgical procedure.

54. Ms. Williams injuries are, in all likelihood, permanent and will continue to cause chronic pain and mental suffering for the remainder of her life. She will likely continue to have limited ability to perform the activities of daily living. She will likely continue to need future therapy and medical treatment to manage her injuries.

### Cause of Action Against the United States of America

55. The Defendant, the United States of America, was negligent in their care and treatment of Ms. Williams in one or more of the following respects:

   a. By puncturing the rectum during the rectocele repair.

   b. By failing to properly repair the punctured rectum.

   c. By failing to obtain intra-operative general or colorectal surgical consultation to repair the punctured rectum.

   d. By failing to properly monitor and treat Ms. Williams following the procedure.

56. At all times material hereto, the officers, employees, agents, and/or representatives of the United States were negligent and



proximately caused the injuries and damages sustained by the Plaintiff.

## Damages

57. As a direct and proximate result of the Defendant's negligent acts or omissions, Plaintiff has suffered, and continues to suffer, severe and permanent injuries, which would not have otherwise occurred. Plaintiff, KIMBERLY A. WILLIAMS, pleads for all damages available under Florida state law, federal law, and equity including, but not limited to:

    a.   Past and future physical pain and suffering;

    b.   Past and future mental anguish;

    c.   Past and future suffering, humiliation, and emotional distress;

    d.   Past and future physical impairment and disability;

    e.   Past and future loss of income and impairment of earning capacity;

    f.   Past and future reasonable charges for medical care, nursing, hospital, rehabilitation services, custodial care, health care, supplies, attendant care expenses and other health services;

    g.   Past and future reasonable and necessary expenses incurred for substitute domestic services;



h.   Travel expenses for purposes of obtaining past and future medical treatment; and

i.   Out-of-pocket expenses and other pecuniary losses.

### Prayer for Relief

WHEREFORE, Plaintiff requests that the Defendant be cited in terms of law to appear and answer herein: that upon final trial and hearing hereof, Plaintiff has judgment against the Defendant, for the amount of actual damages; and for such other and different amounts as they shall show by proper amendment before trial; for post judgment interest at the applicable legal rate; for all court costs incurred in this litigation; and for such other and further relief, at law and in equity, both general and special, to which the Plaintiff may show herself entitled and to which the Court believes her deserving.

Dated this 18th day of May 2018.

Respectfully submitted by:

*/s/ Therese A. Felth*
**Therese A. Felth**
Florida Bar No. 108042
McKenzie Law Firm, P.A.
905 East Hatton Street
Pensacola, Florida 32503
Telephone (850) 432-2856
therese@mckenzielawfirm.com
vcrow@mckenzielawfirm.com
Attorneys for Plaintiff



| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| U.S. Department of Veterans Affairs<br>Office of Chief Counsel (00C)<br>Southeast District - South<br>1601 SW Archer Road<br>Gainesville, FL  32608 | Kimberly A. Williams<br>2707 E. Venus Street<br>Inverness, FL  34453 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY   ☒ CIVILIAN | 4. DATE OF BIRTH<br>09/12/1970 | 5. MARITAL STATUS<br>Single | 6. DATE AND DAY OF ACCIDENT<br>May 11, 2015 | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

This claim arises out of the negligent care and treatment by Dr. Amy O. Stevens, a physician at VA Medical Center, NF/SGVHS,  Gainesville, Florida, which resulted in injury and represented a breach of the prevailing standard of care and of Florida Law.   See attached for more information.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

None

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

None

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Failure to properly repair claimant's punctured rectum during a rectocele repair, or failure to obtain intra-operative general or colorectal surgical consultation in order to perform an appropriate repair, and failure to properly monitor and treat claimant following the procedure.  (See attached)

| 11. | | WITNESSES |
|---|---|---|
| **NAME** | | **ADDRESS** (Number, Street, City, State, and Zip Code) |
| See Attached | | See Attached |

| 12. (See instructions on reverse). | | AMOUNT OF CLAIM (in dollars) | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| None | $1,000,000.00 | None | $1,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *[signature]* | (850) 432-2856 | |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction<br>Previous Edition is not Usable<br>95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

| INSURANCE COVERAGE |
|---|
| In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property. |

**15. Do you carry accident insurance?** ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

**16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?** ☐ Yes  ☐ No   **17. If deductible, state amount.**

N/A

**18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)**

N/A

**19. Do you carry public liability and property damage insurance?** ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

### PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

### PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95 REV. (2/2007) BACK**

Exhibit "B"

STATE OF ___Florida_____,
COUNTY OF ___Miami-Dade_____.

## AFFIDAVIT

BEFORE ME, the undersigned authority, personally appeared MICHAEL D. HELLINGER, M.D., who after being first duly sworn deposes and says:

1. I am the person described by the name listed above;

2. I am a licensed and practicing medical doctor, as more fully described in the attached Curriculum Vitae;

3. I have reviewed medical records involving the treatment and care rendered to Kimberly A. Williams.

4. None of my previously rendered medical opinions have ever been disqualified by any Florida court of law.

5. I am familiar with the standard of care for physicians practicing in the area of colorectal surgery and have specialized in that area of practice throughout my career.

6. I have reviewed medical records from Amy O. Stevens, M.D., VA Medical Center at Gainesville, Citrus Memorial Hospital, Shands at the University of Florida, and the Cleveland Clinic regarding Kimberly A. Williams.

7. Based upon review of the foregoing records, it is my opinion that the treatment and care rendered to Kimberly A. Williams by Amy O. Stevens, M.D. and VA Medical Center at Gainesville, was negligent, and fell below the prevailing professional standard of care for reasonably prudent similar health care providers.

8. Within a reasonable degree of medical probability, the aforementioned breaches of the standard of care, caused or substantially contributed to causing serious injury to Kimberly A. Williams.

Exhibit "B"

9. Based upon my education, experience, and expertise as a medical doctor, Amy O. Stevens, M.D. and VA Medical Center at Gainesville were negligent, violating the applicable standard of care in the following manner: By failing to properly repair the patient's punctured rectum during a rectocele repair, or by failing to obtain intra-operative general or colorectal surgical consultation in order to perform an appropriate repair, and by failing to properly monitor and treat the patient following the procedure.

10. Accordingly, I believe there is a good-faith basis for undertaking a claim for negligence against Amy O. Stevens, M.D. and VA Medical Center at Gainesville and the healthcare providers responsible for Kimberly A. Williams' care while she was at that facility.

FURTHER AFFIANT SAITH NOT.

_____
Michael D. Hellinger, M.D.

STATE OF __Florida_____,
COUNTY OF __Miami-Dade_____.

The foregoing instrument was acknowledged before me this 24 day of August, 2016, by Michael D. Hellinger, M.D., who is personally known to me or who has produced ∩○∟_____ as identification and who did/did not take an oath.

[SEAL]

_____
Notary Public



ROSAMARIA KLEMICK
Notary Public - State of Florida
My Comm. Expires Sep 19, 2016
Commission # EE 829649
Bonded Through National Notary Assn.

Exhibit "B"

STATE OF _Florida_____,
COUNTY OF _____Dave_____.

## AFFIDAVIT

BEFORE ME, the undersigned authority, personally appeared NATHAN B.
HIRSCH, M.D., who after being first duly sworn deposes and says:

1.  I am the person described by the name listed above;

2.  I am a licensed and practicing medical doctor, as more fully described in the
    attached Curriculum Vitae;

3.  I have reviewed medical records involving the treatment and care rendered to
    Kimberly A. Williams.

4.  None of my previously rendered medical opinions have ever been disqualified
    by any Florida court of law.

5.  I am familiar with the standard of care for physicians practicing in the area of
    colorectal surgery and have specialized in that area of practice throughout my
    career.

6.  I have reviewed medical records from Amy O. Stevens, M.D., VA Medical
    Center at Gainesville, Citrus Memorial Hospital, Shands at the University of
    Florida, and the Cleveland Clinic regarding Kimberly A. Williams.

7.  Based upon review of the foregoing records, it is my opinion that the
    treatment and care rendered to Kimberly A. Williams by Amy O. Stevens,
    M.D. and VA Medical Center at Gainesville, was negligent, and fell below the
    prevailing professional standard of care for reasonably prudent similar health
    care providers.

8.  Within a reasonable degree of medical probability, the aforementioned
    breaches of the standard of care, caused or substantially contributed to
    causing serious injury to Kimberly A. Williams.

Exhibit "B"

9.  Based upon my education, experience and expertise as a medical doctor, Amy
    O. Stevens, M.D. and VA Medical Center at Gainesville were negligent,
    violating the applicable standard of care in the following manner:
    By puncturing the rectum during a rectocele repair and failing to properly
    repair the punctured rectum and not contacting a colorectal surgeon to repair
    the punctured rectum.

10. Accordingly, I believe there is a good-faith basis for undertaking a claim for
    negligence against Amy O. Stevens, M.D. and VA Medical Center at
    Gainesville and the healthcare providers responsible for Kimberly A.
    Williams' care while she was at that facility.

FURTHER AFFIANT SAITH NOT.

_____
Nathan B. Hirsch, M.D.

STATE OF ___Florida___,
COUNTY OF ___Dade___.

    The foregoing instrument was acknowledged before me this __31__ day of
August, 2016, by Nathan B. Hirsch, M.D., who is <u>personally known to me</u> or who has
produced _____ as identification and who did/did not take an oath.

[SEAL]

_____
Notary Public



MAYDA VELIZ-MARTIN
Notary Public - State of Florida
Commission # FF 964553
My Comm. Expires Jun 16, 2020
Bonded through National Notary Assn.